## JOSEPH v. CAPPS. (6 Div. 64.)

Supreme Court of Alabama. Jan. 26, 1928.

1. **Witnesses** ⊜⇒40(I)—**In contest for child's custody between mother and unrelated man with whom child had lived, refusal to hear child's testimony held error.**

In contest for the custody of a child under 14 years of age between his mother and unrelated man with whom child had lived since he was 3 years old, refusal to hear child's testimony *held* error.

2. **Parent and child** ⊜⇒2(3)—**In contest for child's custody between mother and unrelated man with whom child had lived, child's best interests held determining factor.**

In contest for the custody of a child under 14 years of age between his mother and an unrelated man with whom child had lived, the best interests of the child, as determined from all the evidence, *held* to be the determining factor.

Thomas, J., dissenting.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Petition of L. H. Joseph against Bridget Capps for custody of a child. From a decree awarding custody to respondent, petitioner appeals. Reversed and remanded.

Charles W. Greer, of Birmingham, for appellant.

Where custody of a minor child is concerned, it is error to refuse to admit evidence tending to show the moral character or reputation of persons claiming such custody. 29 Cyc. 1603; People v. Brown, 35 Hun, 324. · A child of about 14 years of age should be allowed to testify as to conditions surrounding the homes of those seeking his custody and to express a preference as to which party he desires to have his custody. Brinster v. Compton, 68 Ala. 302; Neville v. Reed, 134 Ala. 318, 32 So. 659, 92 Am. St. Rep. 35. Competency of a witness of tender years rests largely in the discretion of the trial court, but is subject to review. Puckett v. State, 213 Ala. 383, 105 So. 211; 40 Cyc. 2200.

Walter H. Anderson, of Birmingham, for appellee.

Counsel discusses the questions raised and treated, but without citing authorities.

PER CURIAM. [1] The judgment of the court is that the evidence on the hearing was not closed on the evening of October 12th, but was carried to the next day by the statement of the court to counsel, "Suppose you let the mother, Mrs.' Capps, and Mr. Joseph and the boy come back here at 9 o'clock in the morning;" and at that time declining to hear the boy, saying, "Inasmuch as the child is not 14 years old and has been, ever since he

was 3 years old, in the custody of Mr. Joseph who is not in any way related to him, I don't think the court could under the circumstances hear the testimony of the child." This was reversible error, to which exception was duly taken.

[2] In this ruling on the evidence, it is not to be taken by the trial court as an expression of judgment by this court upon the facts, and, upon another hearing, 'the trial before the circuit court, in equity, which will be de novo, the best interest of the infant will be the paramount inquiry. This will be determined and adjudged upon all the evidence offered in 'open court.

The judgment of the circuit court, in equity, is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE, SOMERVILLE, GARDNER, BOULDIN, and BROWN, JJ., concur.

THOMAS, J. (dissenting). The petition was to the court of domestic relations for the custody of a minor alleged to be deserted by his father and as being dependent or neglected. The prayer of the petition was that his mother be required on notice to show cause why the child should not be dealt with according to the provisions of the Gen. Acts 1919, p. 128. There was a judgment granting the petition, and an appeal was taken to the circuit court sitting in equity, and the petition was there denied and adjudged that the mother was entitled to the custody of said child.

At the trial there was no evidence reflecting upon the character, morals, or integrity of the mother, or evidence tending to show that she was unfit to have the custody, or unable or unwilling to maintain and support the child.

Since the child was left by the mother with Mr. and Mrs. Joseph, the conditions had changed. The care and motherly advice and attention given by Mrs. Joseph was removed by the latter's death. The relation of trust and confidence theretofore existing between the mother and Mr. Joseph had changed—it is immaterial to this controversy what the cause of that change was or whether it was well founded on the part of the child's mother. It is sufficient that there was a change in their relations and the situation under which the child was placed with them. For the long time the child was given to the care of Mr. and Mrs. Joseph there was no consent for or effort to effectuate a legal adoption. It was thus apparent to the Josephs that the prima facie or paramount right of a parent may be asserted at some time.

The decree for divorce, in favor of the child's mother, gave her the children, including this minor; the father obeyed the man-

dates of this decision, and thereafter had the right to suppose that the mother would exercise the parental functions and relations to all of said children, and not permit Oscar to remain with third parties. Hence the allegations of the petition directed to the father were not well founded.

After Mrs. Joseph's death, the mother recovered the custody of her child from another and with whom she had not committed him and who were residents of another county. She repossessed the infant and had him for some time, when he ran away and returned to Mr. Joseph, and thereafter the latter, as petitioner, invoked the aid of the court of domestic relations, alleged that he had the control and guardianship of the child; that he was dependent and neglected and in need of the care and protection of the state; that the father of said child had deserted him; and that the mother was an unfit custodian. If the petitioner had theretofore a moral right in the premises, he had forfeited the same by placing the boy with friends in another county and remote from the mother.

Counsel for appellant say that before the case was tried the judge took "the appellant and appellee into his private office, where he consulted with them for some 15 or 20 minutes, and then called counsel for both parties to his chamber and stated, in substance, that, if appellant desired to do the right thing, he would gracefully deliver the child to the appellee, whose rights to its custody, as its natural mother, could not be overcome." This action was under the enlarged powers of a court charged with the hearing of such an appeal and to determine the best interests of an infant. This was the paramount inquiry. Lewis v. Crowell, 210 Ala. 199, 97 So. 691; Children's Aid Soc. v. Davis, 211 Ala. 345, 109 So. 325; Neville v. Reed, 134 Ala. 318, 32 So. 659, 92 Am. St. Rep. 35. The statute provides:

"At such hearing the nature of the proceeding shall be explained to the child and to the parents, custodian, or guardian. The judge of said court may conduct the examination of the witnesses, and may take testimony and inquire into the habits, surroundings, conditions, tendencies and guardianship of said child to enable the court to determine if such child is dependent, neglected or delinquent, and if so, what order or judgment will best conserve the welfare of said child and carry out the objects of this act. * * *

"Said court shall have power upon hearing of any case involving any child to exclude the general public from the room where said hearing is held, but it shall admit thereto such persons as may have a direct interest in the case. The records of all such cases may be held from indiscriminate public inspection, but such records shall be at all reasonable times open to inspection by such child, its parents or guardian, or its attorneys, or the attorney for its parents or guardian. The hearing and proceedings herein provided for may be conducted in the judge's chamber or in any other room or apartment that may be provided for in such cases, and in such places within the county as may be convenient to the court and all parties concerned."

However, the action of the trial court under the last-cited section is not presented for review by the record in its present condition, and is not passed upon.

"This act shall be liberally construed in order to accomplish the beneficial purposes herein sought." General Acts of Alabama 1919, pp. 128, 132, 134, 144.

At the trial an exception was presented as follows: That petitioner's counsel made known to the court the desire to examine the minor whose custody was the subject of the proceedings, and the court said: •

"Inasmuch as the child is not 14 years old, and has been, ever since he was 3 years old, in the custody of Mr. Joseph, who is not in any way related to him, I don't think the court could under the circumstances hear the testimony of the child."

The petitioner's counsel reserved exception to that ruling, stating to the court:

"We offer to prove by the boy the surroundings of his present home. We would like to have an expression from the boy on the stand as to which one of the two parties he would prefer to have his custody, Mr. Joseph or Mrs. Capps. We should also like to prove, and offer to prove by the boy that one of the reasons why he prefers to remain in the custody of Mr. Joseph is on account of the moral surroundings of his mother's home, and offer to prove by the boy that these surroundings are such that make her, or tend to make her, an unfit person to have custody of the boy. * * * We offer further to prove by him specific instances of conduct on the part of the mother which we think would render her an unfit custodian of the boy.

"The Court: The court thinks that is a matter of discretion, whether it will hear testimony from this boy of tender years, and is of the opinion that such discretion should be exercised against the contention of the present custodian of the boy."

The competency of a child of tender years to testify rests largely in the sound discretion of the trial court, subject to review for abuse of that discretion. This is the announcement of such court in criminal cases. Puckett v. State, 213 Ala. 383, 105 So. 211. And in a petition for a writ of habeas corpus presented by a father for the custody of his children, in Brinster v. Compton, 68 Ala. 299, 302, Judge Stone said, if the father be unsuitable or unable properly to care for his offspring, "and especially if that offspring, having sufficient judgment, prefer not to return to him, the court should grant no relief in the premises, but leave the parties in statu quo." And in Neville v. Reed, 134 Ala. 317, 320, 32 So. 659, 92 Am. St. Rep. 95, the father was the petitioner in a writ of habeas corpus for his child, and the observation is made that the child's feelings, attachments, preferences,

and contentment are, within proper limitations, proper subjects of inquiry, when the infant has sufficient judgment to choose for itself.

To a full understanding of this ruling by the court, it should be said the hearing was had and the conclusion of the court announced, when the petitioner's counsel said that he objected to closing the case without allowing the petitioner "to put the boy on the stand to prove the conditions surrounding him while at his mother's home and the conditions surrounding him where he is now, and allow him to express a preference as to which party he had rather live with," and further asked to have the opportunity to put on the stand witnesses showing petitioner's good character and to show the conditions of the home where he now had the boy. The court had said:

"The mother is .the natural mother of this child, and at an early period in the child's life, when about 3 years old, feeling herself unable to give it proper care and attention, she turned it over to Joseph and his wife. Joseph's wife at that time was her friend, and Joseph and his wife cared for the child for many years, and Joseph's wife is now dead, and the mother now wants the custody of the child, and I don't see how it is possible to deny it.

"Mr. Greer: As I understand it, you are going to enter a decree giving the child to the mother?

"The Court: I don't see how I could do otherwise and hold that a stranger is entitled to the custody of the child as against its mother. I think that Mr. Joseph, and I think it ought to be said in his favor, that he and his wife during her life did a very charitable thing in caring for the child during his tender years and while it couldn't care for itself. They are to be commended for that, and any money they spent on the child they should be commended for that, but they should have been confronted with the situation that the mother might at some future time ask for the child back, and she is asking for it, and I don't see how it is possible to deny it."

The court further replied to counsel:

"I will let you bring the boy back in the morning, and, so far as my conclusion is, I am assuming that Mr. Joseph's character is good. He has certainly shown a very praiseworthy interest in this boy's welfare over a long period of years, and that in itself would be evidence of his good character. At the same time, I don't think I can turn a deaf ear to the petition of a mother asking for her own child. Suppose you let the mother, Mrs. Capps, and Mr. Joseph and the boy·be back here at 9 o'clock in the morning."

When the proposed scope of the further or reopened examination was as indicated, the court declined to hear further evidence. We find no reversible error in this. The declining, at the instance of the petitioner, for further examination to permit the expression of a preference by· the child, and for the express purpose of aiding the effort of such petitioner to take from the mother a "child of tender years" and not shown to be of the required "mental capacity" shows no reversible error. The record is silent as to the desires of the child in the premises or of his capacity to testify or to exercise the freedom of will and judgment to make a choice. The court concluded the matter as follows:

"In denying the question of the custody of the boy, I am assuming that Mr. Joseph is of good character, and in awarding the custody of the child to its mother I am doing it on the ground that she, being the natural mother of the child, is entitled to its custody as against the claim of a stranger to the child. Let the child be turned over to its mother."

The appeal was noted, the court declined to fix a bond, and ordered the child "turned over to its mother," and the "hearing closed." There is no res judicata as to the best interest of the infant. We believe it is to his best interest that he be given to the mother. This is the judgment of the circuit court, in equity, on the facts, and we should not .disturb that judgment in a controversy with petitioner, where the original status had materially charged and the mother is now able to care for her child. The foregoing are the views of the writer by way of dissent.